Kevin K. Ross-Andino (*pro hac vice*)
éclat Law PA
307 Cranes Roost Blvd., Suite 2010
Altamonte Springs, Florida 32701
Florida Bar No. 66214
kevin.ross@eclatlaw.com
Telephone: (407) 636-7004

*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jessica McAfee, et al. | **Case No:** 2:23-cv-01144-DJH |
| Plaintiffs, | |
| v. | **RESPONSE TO DEFENDANT'S** |
| LifeStance Health Group, Inc., a Delaware corporation, | **MOTION TO DISMISS COMPLAINT** |
| Defendant. | |

Pursuant to Rule 7.2(c) of the Local Rules of Civil Procedure, Plaintiffs file this memorandum of law in response to the Motion to Dismiss [DE-19] filed by Defendant, LifeStance Health Group, Inc. ("LHG"), on August 25, 2023, and state as follows:

**I.  STANDARD OF REVIEW**

In evaluating a Rule 12(b)(6) motion for failure to state a claim, the factual allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Schell v. Richards*, No. 97-15743, 1997 U.S. App. LEXIS 29932, at *2 (9th Cir. 1997). A complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 173 L. Ed. 2d 868 (2009). If a party pleads facts that are facially plausible, a motion to dismiss should be denied.

*See ACT Grp. Inc. v. Hamlin*, No. CV-12-567-PHX-GMS, 2012 U.S. Dist. LEXIS 101446, at *26 (D. Ariz. July 20, 2012). A claim is facially plausible when the court can draw a reasonable inference, based on the facts pled, that the opposing party is liable for the alleged misconduct. *Ashcroft*, 556 U.S. at 678. Further, in deciding a motion to dismiss, the Court's evaluation of the motion is limited to the four corners of the plaintiff's complaint and the attached exhibits. *Meschkow & Gresham, P.L.C. v. Franchise Capital Corp.*, No. CV 09-2238-PHX-SRB, 2011 U.S. Dist. LEXIS 162498, at *15 (D. Ariz. Apr. 14, 2011). Issues of fact are not appropriately addressed on a motion to dismiss, as the purpose of said motion is to test the legal sufficiency of the complaint. *Meschkow*, 2011 U.S. Dist. LEXIS 162498, at *16.

Notably, the threshold of sufficiency that a complaint must meet to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Schell*, 1997 U.S. App. LEXIS 29932, at *1. A dismissal is not appropriate if the factual allegations "raise a right to relief above the speculative level" on the assumption that all of the complaint's allegations are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**II.   THE COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE A CAUSE OF ACTION FOR UNPAID WAGES**

LHG argues that "Plaintiffs were highly educated, licensed professionals exempt from the FLSA's overtime and minimum wage provisions." The following requirements must be met for a professional to be exempt from the FLSA: (1) the employee must receive a salary or fee basis at a rate of at least $684 per week (or $455 per week if employed in the

- 2 -

Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the Virgin Islands by employers other than the Federal government); (2) the employee's primary duty must consist of performing work that requires advanced knowledge; (3) the advanced knowledge must be in a field of science or learning; and (4) the advanced knowledge must be customarily acquired by a prolonged course of specialized intellectual instruction. 29 C.F.R. §§ 541.300, 541.301.

Here, there were multiple weeks Plaintiffs did not receive a salary or fee basis at a rate of at least $684 per week, as alleged in the Complaint.[1] *See* DE-1, ¶¶ 62, 64, 105, 113. Therefore, the professional exemption does not apply, and Plaintiffs are protected under the FLSA. Exemptions under the FLSA are construed narrowly and the burden is on the employer to show it is entitled to an exemption under the FLSA.[2] *McKeen-Chaplin v. Provident Sav. Bank*, 862 F.3d 847, 850 (9th Cir. 2017). The employer must prove applicability of an exemption by "clear and affirmative evidence." *Abel v. S. Shuttle Servs.*, 301 F. App'x 856, 859 (11th Cir. 2008); *see also Jones v. Nw. Telemarketing, Inc.*, Civil No. 99-990-JO, 2000 U.S. Dist. LEXIS 8745, at *8 (D. Or. Apr. 7, 2000). LHG did not and cannot prove Plaintiffs are exempt from the wage

---

[1] The factual allegations in the Complaint must be taken as true for purposes of a motion to dismiss. Plaintiffs have alleged sufficient facts to show that the professional exemption does not apply since Plaintiffs did not receive a salary of at least $684 per week. To accept the Defendant's argument, this Court would have to reject the facts alleged in the Complaint, in violation of Fed. R. Civ. P. 12(b)(6). The Complaint makes it abundantly clear that each of the Plaintiffs had several pay periods where they received no pay, and there are several pay periods for which LHG seeks to recover the sums paid to the Lead Plaintiffs because LHG treated this money as a loan and not a real wage or fee.

[2] That burden is satisfied through the accumulation and presentation of evidence, either at trial or on a motion for summary judgement, not pursuant to a motion to dismiss where the Court cannot consider such extrinsic matters.

requirements of the FLSA at this stage of the litigation.

Evaluating whether an employee is exempt "requires a thorough, fact-intensive analysis of the employee's employment duties and responsibilities." *Girolamo v. Cmty. Physical Therapy & Assocs.*, No. 15 C 2361, 2016 U.S. Dist. LEXIS 90128, at *15 (N.D. Ill. July 12, 2016), citing *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012). Ruling on whether Plaintiffs are exempt would be premature at this stage of the litigation, as it would require the Court to consider matters outside of the four corners of the Complaint, which is improper when evaluating the sufficiency of the pleadings for purposes of a Motion to Dismiss.

Nevertheless, LHG cites *Mayhew v. Gen. Med.*, PC, No. 18-CV-2177-RJD, 2020 WL 338150 (S.D. Ill. Jan. 21, 2020) to support its argument that nurse practitioners are exempt from the FLSA under the professional exemption. However, *Mayhew* is not controlling or even applicable to this case. Notably, in *Mayhew* the court was ruling on a motion for summary judgment – not a motion to dismiss. After conducting a rigorous review of the facts, circumstances and evidence presented by both parties, the court ruled that the plaintiff in that case (not all nurse practitioners) qualified as a professional employee based on her job duties, the specific services she performed, *and* her salary that compensated her far more than the minimum required for a fee basis, therefore, making her exempt from the FLSA's overtime requirements. This isolated case was not intended to rewrite the FLSA, but to apply the statute to a particular set of facts and circumstances, and to decide how the statute applied in that specific instance.

As previously stated, the Complaint makes it clear there were multiple weeks LHG failed to pay Plaintiffs (and other employees) a salary or fee basis at a rate of at least $684 per

week. *See* DE-1, ¶ 62, 64, 105, 113. Moreover, a ruling on whether Plaintiffs qualify for the learned professional exemption would be premature, as the parties have not presented any evidence regarding Plaintiffs' job duties and the services they performed. LHG also sidesteps the fact that members of the collective action include therapists and social workers, which are not exempt under the FLSA. DE-1, ¶ 70; *see also Solis v. Washington*, 656 F.3d 1079, 1088 (9th Cir. 2011) (defendant failed to meet its burden of showing that social workers came within the FLSA's "learned professional" exemption).

LHG argues that Plaintiffs failed to state a claim for unpaid wages under the FLSA because their Complaint does not allege the amount and extent of their work as needed to establish a prima facie case of an FLSA violation. Plaintiffs have in fact alleged sufficient facts to state a claim against LHG for unpaid wages in violation of the FLSA.

To state a claim under the FLSA, "the plaintiff must allege at least one workweek when [s]he worked in excess of forty hours and was not paid for the excess hours in that workweek or was not paid minimum wages." *Coe v. Hirsch*, No. CV-21-00478-PHX-SMM (MTM), 2021 U.S. Dist. LEXIS 230151, at *4 (D. Ariz. Dec. 1, 2021); *see also Tolano v. El Rio Bakery*, No. CV-18-00125-TUC-RM, 2019 U.S. Dist. LEXIS 207142, at *6-7 (D. Ariz. Nov. 27, 2019). Here, Plaintiffs allege the following, among other material facts, to support their FLSA claim against LHG:

A. LHG refused to pay Plaintiffs "minimum wages, overtime wages, and wages in general (i.e., no payment was made at all) for one or more workweeks during the applicable Collective Period[.]"[3] *See* DE-1, ¶ 115.

---

[3] The Collective Period is from January 2020 to present. *See* DE-1, ¶ 59.

    B. Plaintiffs routinely worked 40 and more hours per week several times a month while employed by LHG and many of the Plaintiffs went through periods in which they did not receive any compensation for an entire month. *See* DE-1, ¶¶ 61- 62.

    C. LHG deprived all the collective action members (which includes Plaintiffs) of earning at least the federal minimum wage for all hours worked, and/or failed to pay them overtime wages when appropriate. *See* DE-1, ¶ 67.

    D. "[S]ince the advances were a 'loan' and not wages (according to LHG), then the [Plaintiffs] did not actually receive any wages during their first six to twelve months of employment[.]" *See* DE-1, ¶ 64.

These allegations are sufficient to state a claim against LHG for violation of the FLSA's overtime and minimum wage provisions. The arguments raised by LHG amount to nothing more than a denial of the facts alleged, which is not a proper basis for dismissal under Fed. R. Civ. P. 12(b)(6).

LHG further argues that Plaintiffs' effort to plead this cause of action on behalf of a collective of other current and former LHG employees fails because they do not allege how these employees were similarly situated. Specifically, LHG argues the Complaint does not contain allegations establishing that Plaintiffs all had similar job duties and were paid the same way, which simply is not true. The Complaint contains allegations establishing that Plaintiffs and members of the collective action were paid the same way and had similar job duties. Plaintiffs allege that a collective action is appropriate under the circumstances because the collective action members are similarly situated in that "[e]ach was to be paid on the same pay scale and formula, making the problems alleged herein the same for any person that was or is a Clinician." DE-1, ¶ 67(b).

Plaintiffs also provided their job titles and a description of their job duties, along with the job titles of the similarly situated employees and a description of their job duties. *See* DE-

1, ¶ 8, 59, 70, 76. As stated in the Complaint, members of the collective action include therapists, psychiatric nurse practitioners, and clinical social workers. DE-1, ¶ 70. Furthermore, "Lead Plaintiffs (and the other individuals that would ultimately comprise the collective and class members) are currently, or were at one time, nonphysician employees of LifeStance classified as a 'Clinician,' a term used by LifeStance to identify nonexempt, W2 employees who provide mental health clinical treatment or therapy to children, adolescents, and adults suffering from a variety of mental health issues." DE-1, ¶ 8. Again, LHG is merely denying Plaintiffs' allegations, which is not a proper basis for dismissal under Rule 12(b)(6). As such, the Motion to Dismiss should be denied.

### III. THE COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE A CAUSE OF ACTION UNDER THE FLSA'S ANTI-KICKBACK PROVISION

LHG argues that Plaintiffs failed to state a claim for violation of the FLSA's anti-kickback provision because the "pleadings make clear that they agreed to a plainly written advance-on compensation arrangement that is legal and has been endorsed by the U.S. Department of Labor." This argument misconstrues and ignores the express allegations in the Complaint and distorts the facts to rewrite the narrative in LHG's favor. Once again, LHG is merely denying the allegations in the Complaint and attempting to raise an argument that is not proper for a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

Pursuant to 29 C.F.R. § 531.35, wages cannot be considered to have been paid by the employer to the employee unless they are paid finally and unconditionally or "free and clear." Furthermore, "[t]he wage requirements of [the FLSA] will not be met where the employee

'kicks-back' directly or indirectly to the employer . . . the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35.

The Complaint states that LHG "routinely and systematically made illegal deductions to the Clinician's pay without reason or description" which forced Clinicians to kick-back their wages to LHG. DE-1, ¶¶ 123, 124. The Complaint further states that such deductions frequently "caused Clinicians to earn $0 for work conducted or, less than $450.00 in a given week." DE-1, ¶ 127. These allegations are sufficient to state a claim against LHG for illegal kickbacks in violation of 29 C.F.R. § 531.35. *See Ketner v. Branch Banking & Tr. Co.*, 143 F. Supp. 3d 370, 375 (M.D.N.C. 2015) (finding plaintiffs alleged sufficient facts to state a claim for violation of the FLSA's anti-kickback provision based on an agreement that required employees to repay training costs if they resign within 5 years of employment). Therefore, LHG's Motion to Dismiss Count II should be denied.

The arguments raised by LHG go to whether Plaintiffs will be able to present enough evidence to prove LHG violated the anti-kickback provision of the FLSA – not whether Plaintiffs have alleged sufficient facts to state a cause of action against LHG for violating the anti-kickback provision. Nevertheless, out of an abundance of caution, Plaintiffs will address LHG's argument that they employed an "advance-on compensation arrangement that is legal and has been endorsed by the U.S. Department of Labor."

LHG would like the Court to believe they were simply advancing compensation to Plaintiffs and recouping the advance through paycheck deductions in compliance with the FLSA. They would also like the Court to believe that their Employment Agreements, "set forth in clear language" how Plaintiffs would be "advanced" compensation and how the

advance would be repaid through paycheck deductions, and that Plaintiffs voluntarily agreed to this compensation scheme by "sign[ing] a written contract making all of this clear." DE-19, p. 1. This could not be further from the truth.

The compensation scheme employed by LHG is not consistent with the type of compensation practices that have been endorsed by the DOL and federal courts as consistent with the FLSA. The practice of advancing compensation to an employee and recouping the advance through paycheck deductions may be complaint with the FLSA if the employer makes the appropriate deductions from the employee's pay to ensure the employee is properly compensated for all hours worked. The FLSA's requirements are not satisfied if the deductions result in the employee getting paid less than the federal minimum wage for any given week or a failure to pay the employee the requisite premium for any overtime hours worked. An employer also cannot use an advance to circumvent the FLSA's requirements or to create a debt obligation without the employee's knowledge and consent.

Here, the paycheck deductions made by LHG were not commensurate with the work performed by the employee. In other words, the deductions were not tied to the number of hours worked by Clinicians or any other ascertainable metric. Instead, LHG made arbitrary and illegal deductions from Plaintiffs paychecks based on a nebulous standard that was not tied to the hours worked by Plaintiffs, which frequently resulted in Plaintiffs receiving no compensation for the time that they worked and caused them to become substantially indebted to LHG. Moreover, under LHG's compensation system, Clinicians could, and often did, work over forty hours per week and the hours spent working would not result in the repayment of the advance. This resulted in Clinicians somehow falling further and further into "debt"

despite working full time for LHG.

Generally, if an employer advances wages to an employee, the amount advanced is calculated to ensure the employee will earn the funds advanced so long as the employee works for the period that the funds were advanced for. For example, if on January 1st an employee requests an advance on February's compensation and the employer agrees, then generally the employee will earn the wages that were advanced so long as he/ she works full time for the month of February.

Unlike the situation described above, LHG paid Plaintiffs an arbitrary amount per month under the guise of an "advance" but based on the unscrupulous policies implemented by LHG, Plaintiffs would not "earn" the funds advanced even if they worked full time for the entire month. Thus, instead of earning wages for the time that they worked they were somehow becoming more and more indebted to LHG the longer they remained employed, regardless of how many hours they worked. This is due to the fact that Plaintiffs were unable to earn patient billing fees (according to LHG) sufficient to offset the insurmountable debt obligation purportedly created by these "advances" due to the arbitrary policies and procedures implemented by LHG. *See* DE-1, ¶ 39. These policies allowed LHG to avoid paying Plaintiffs their earned wages. Needless to say, a compensation scheme such as the one used by LHG, has never been endorsed by the Department of Labor or any federal court.

Furthermore, as explained in the Complaint, LHG's compensation scheme was anything but transparent.[4] Plaintiffs frequently requested information from LHG regarding

---

[4] LHG refers to their unlawful compensation scheme as a "plainly written advance-on compensation arrangement[.]" DE-19, p. 9. But as explained in the Complaint, LHG's unlawful compensation scheme was not plainly written. *See* DE-1, ¶ 28-29, 32, 36-38.

the metrics or data used to calculate their gross compensation and the deductions from their paychecks, and information regarding the amount(s) applied to their alleged advance each pay period.[5] DE-1, ¶ 38. LHG, however, did not share any information with Plaintiffs about the metrics used to calculate their gross compensation each pay period, nor did LHG provide Plaintiffs with any information regarding deductions from their "advance" each pay period. *Id.* at ¶¶ 36-38. In other words, Plaintiffs pay stubs merely stated the "gross number" (i.e. their gross compensation) but their pay stubs did not contain any information regarding how the gross number was calculated or whether there were any deductions related to the alleged "advance." *Id.* Furthermore, Plaintiffs did not voluntarily agree to the advance. There were numerous occasions where Plaintiffs asked LHG to stop making the advance to avoid getting further into debt, but LHG paid it anyway. DE-1, ¶ 42.

LHG further contends that Count II should be dismissed because Plaintiffs failed to set forth allegations regarding how they were subject to similar practices as the members of the putative collective action. As explained above, the Complaint alleges sufficient facts to establish that Plaintiffs and members of the collective action are similarly situated and were subject to similar practices. *See* DE-1, ¶¶ 67, 72; *see also* DE-1, ¶¶ 123-127 (further explaining how Plaintiffs and members of the collective action were subject to similar practices in that LHG routinely and systematically made illegal deductions to their pay without reason or

---

[5] Plaintiffs had to request this information from LHG because the terms of the so called "advance" were not clear from the employment agreement, as alleged by LHG, and Plaintiffs pay stubs did not contain any information regarding deductions to their gross compensation and how said deductions related to the alleged "advance". DE-1, ¶¶ 36-38.

description, which forced them to kick-back their wages to LHG). Based on the foregoing, the Motion to Dismiss Count II should be denied.

### IV. THE COMPLAINT ALLEGES SUFFICIENT FACTS TO STATE A CAUSE OF ACTION FOR DECLARATORY RELIEF

LHG alleges that Plaintiffs claim for declaratory relief should be dismissed because the Complaint "fails to state a plausible claim under the Thirteenth Amendment." However, LHG has again misconstrued the allegations in the Complaint to try to convince the court that Plaintiffs can prove no set of facts that would entitle them to relief. While Count III does reference the Thirteenth Amendment and the concept of indentured servitude, Plaintiffs' claim for declaratory relief is not based solely on the Thirteenth Amendment or the concept of indentured servitude. Instead, it is based on the fact that LHG's compensation practices violate federal and state employment laws, including the FLSA, and the terms of LHG's employment agreement are unconscionable.

Count III asks the Court to declare: "(1) Whether the 'claw back' or 'advance' provisions of the contract are void and unenforceable, eradicating the entire contract as compensation provisions are a material term of the contract[;] (2) Whether the employment contract or corporate policies regarding 'Obligations Upon Termination' is void and unenforceable as it relates to the repayment/reimbursement of the Incentives/Advance/Debt[;] (3) Whether the 'Compensation' and 'Advance on Compensation' provisions of the contract (and accompanying schedule) are void and unenforceable, eradicating the entire contract as compensation provisions are a material term of the contract[;] and (4) Whether the contract between the parties created a valid, binding, enforceable, and lawful monetary repayment obligation (debt) against Plaintiffs and in favor

of LifeStance." DE-1, ¶ 142 (a) – (d). This is not a Thirteenth Amendment claim and Plaintiffs' claim for declaratory relief does not hinge on whether LHG's compensation policies and employment agreement violate the Thirteenth Amendment.

Plaintiffs assert that the provisions in the employment agreement pertaining to the "advance" and "obligations upon termination" are void and unenforceable given that they are unconscionable and violate public policy in addition to the FLSA. DE-1, ¶¶ 134, 138-141. While Plaintiffs believe that LHG's compensation policies violate the purpose and intent of the Thirteenth Amendment, the Court can issue a declaratory judgment on the issues identified in ¶ 142 of the Complaint regardless of whether there is a violation of the Thirteenth Amendment, given that LHG's actions violate public policy, the FLSA and numerous other state and federal laws, evidence of which will be presented at trial.

Plaintiffs alleged sufficient facts to state a cause of action under 28 U.S.C. § 2201, the Declaratory Judgment Act. Specifically, Plaintiffs have alleged sufficient facts to show there is a substantial, ongoing controversy and an actual, present need for a declaration as to whether the provisions in the employment agreement pertaining to the "advance" and "obligations upon termination" are void and unenforceable. *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1139 (N.D. Cal. 2018)(finding plaintiff stated cause of action for declaratory relief under 28 U.S.C. § 2201, where there was a dispute regarding the enforceability of certain contract provisions and plaintiff sought a judgment declaring said provisions unconscionable); *see also Navajo Nation v. Peabody Coal Co.*, No. CIV-93-2342-PCT-SMM, 2009 U.S. Dist. LEXIS 25661, at *17 (D. Ariz. Mar. 25, 2009)("Declaratory relief may be sought to resolve disputes regarding the validity of a contract or the meaning of disputed

terms in a contract."). The facts plead show that there is a bona fide dispute between the parties as to whether the subject provisions are unconscionable and violate public policy in addition to the FLSA. DE-1, ¶¶ 131, 133-139.

Furthermore, the alleged facts show that there is substantial likelihood Plaintiffs will suffer injury in the future given that LHG has continued its efforts to collect money from Plaintiffs based on the debt purportedly created by the "advances" and has threatened legal action against Lead Plaintiffs and other Clinicians for nonpayment of the alleged debt. DE-1, ¶¶ 132, 133; *see also Elec. Arts, Inc. v. Hebrew Univ. of Jerusalem*, 100 F. App'x 629, 631 (9th Cir. 2004)(establishing that a threat of litigation is sufficient to establish a case or controversy upon which declaratory judgment can be based). Based on the foregoing, LHG's Motion to Dismiss Count III should be denied.

Lastly, LHG's Motion to Dismiss Count III should be denied given that the Motion does not specify how Plaintiffs failed to allege the necessary elements of a declaratory judgment claim. *See, e.g., Nielson Golden Crab Fishery v. Butterworth*, No. 10-61091-CIV, 2011 U.S. Dist. LEXIS 83855, 2011 WL 3293357, at *2 (S.D. Fla. Aug. 1, 2011) (denying motion to dismiss because defendant did not "specify how [the plaintiff] failed to allege the necessary elements of a declaratory judgment claim" and "[b]ecause [the defendant] prematurely argues the merits of [the plaintiff's] claim for declaratory relief").

**V.     THE FLORIDA LAWSUIT DOES NOT BAR PLAINTIFFS FROM PROCEEDING WITH THIS ACTION.**

LHG alleges that Plaintiffs claim for declaratory relief should also be dismissed because "it is duplicative of an identical claim filed in the Florida Class Action by plaintiffs' counsel, on behalf of an overlapping group of putative class members[,]" and "[t]his serial filing

represents forum shopping, duplicative litigation, and [creates] the potential for inconsistent federal verdicts[.]"

As a preliminary matter, the claims asserted in this action are not duplicative of the claims asserted in the Florida lawsuit because the parties and class definitions are different, therefore, the "first-to-file" rule does not apply. The Lead Plaintiffs in this case are different than the Lead Plaintiffs in the Florida lawsuit. The Lead Plaintiffs in the Florida lawsuit are domiciled in Florida, whereas, the Lead Plaintiffs in this case reside in different states across the country, including Virginia, Ohio, Washington, North Carolina, Georgia, Tennessee, and Oregon. A class has not been certified yet in either case, therefore, there is no overlap between the class members as alleged by LHG.

Regardless, even if the court certifies the Florida case as a class and collective action, the Lead Plaintiffs in this case cannot participate in the Florida lawsuit because in that case, members of the class and collective action are limited to Clinicians "who provided mental health clinical services to [LHG] patients within the State of Florida" during the class and collective period. The Lead Plaintiffs in this case are not Florida residents and did not provide services to LHG patients in Florida. Therefore, even if the court certifies a class and collective action in the Florida lawsuit, the Lead Plaintiffs in this case will not have the ability to opt into the collective action in Florida and they would not be included in the Florida class since they did not provide services to LHG patients in Florida. The Florida case will not provide redress to the Plaintiffs in this case, and they would be left without recourse if this Court were to grant LHG's Motion to Dismiss.

More importantly, any issues related to the parameters of the class can be addressed

when Plaintiffs move for class certification to ensure there is no double dipping. Plaintiffs will precisely define in their motion for class certification, which individuals would be included and excluded from the class. With that being said, issues related to the size and definition of the class are premature at this stage of the litigation since Plaintiffs have not moved for class certification yet. Also, this issue is premature because to some extent, the definition of the class in this case will depend on whether a class has already been certified in Florida.

If the Florida suit is certified as a class and collective action, then Florida can be carved out of the class/ collective in this case. This would mean that if both lawsuits are certified as class and collective actions then Clinicians who provided mental health clinical services to LHG patients in Florida would only be part of the class in the Florida lawsuit and would not be eligible to participate in this lawsuit. This would ensure there is no double dipping. Nevertheless, issues related to the size and definition of the class are not proper for a motion to dismiss since the parameters of the putative class have no bearing on whether Plaintiffs alleged sufficient facts to state a cause of action for declaratory relief.

Furthermore, the Motion to Dismiss should be denied because according to LHG the terms of employment vary between employees so a ruling regarding the enforceability of the Plaintiffs' employment agreements in this case would not be duplicative of a ruling regarding the enforceability of the employment agreements in the Florida lawsuit.[6]

---

[6] LHG argues in its Motion that the Plaintiffs in this action are not similarly situated to the class and collective members whom they seek to represent because they have "potentially different employment contracts" and "negotiated their employment contracts under different circumstances". DE-19, pp. 2, 10. If the terms of employment differ between employees as alleged by LHG, then LHG cannot argue that Plaintiffs claim for declaratory relief is duplicative of the claim for declaratory relief in the Florida lawsuit.

Lastly, Defendants argument regarding forum shopping fails for a number of reasons. First, the defendant must "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Doe v. Horne*, No. CV-23-00185-TUC-JGZ, 2023 U.S. Dist. LEXIS 93224, at *4-5 (D. Ariz. May 25, 2023). LHG maintains its corporate headquarters in Arizona; thus, Arizona is presumably the most convenient forum for LHG to litigate this case. Suing a corporation in the state where it is headquartered does not equate to forum shopping. *See e.g. Cardoza v. T-Mobile USA, Inc.*, 2009 U.S. Dist. LEXIS 25895, 2009 WL 723843, at *3 (N.D. Cal. Mar. 18, 2009) ("T-Mobile's decision to seek to transfer a later-filed case to the district where it has its corporate headquarters cannot be characterized as forum shopping."); *see also Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1186 (N.D. Cal. 2010)(holding there was no evidence of forum shopping when plaintiffs sued defendant in the district where plaintiffs thought defendant's corporate headquarters was located). This is also not a situation where Plaintiffs are seeking to avoid an unfavorable ruling in another district. The court has not entered an unfavorable ruling in the Florida lawsuit and as explained above, Plaintiffs are not parties to the Florida lawsuit and cannot participate in the Florida lawsuit.

WHEREFORE, Plaintiffs request that this Court deny Defendant's Motion to Dismiss [DE-19], and grant Plaintiffs any additional relief this Court deems proper.

Respectfully submitted,

éclat Law, PA

/s/ Kevin K. Ross
Kevin K. Ross, FBN 66214
teamross@eclatlaw.com
*Trial Counsel for the Lead Plaintiffs and Class Members*