**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Mcafee, et al., | No. CV-23-01144-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| LifeStance Health Group Incorporated, | |
| Defendant. | |

This matter arises out of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the Declaratory Judgment Act, 28 U.S.C. §2201(a) ("DJA"). Plaintiffs Jessica McAfee, Lisa Miller, Hanna Naude, Angela Charlton, Cheryl Mitchell, H.L. Smith, Denise Trent, Lydia Potoma, and Jacqueline Silva (collectively "Plaintiffs") filed a Collective and Class Action Complaint (Doc. 1) ("Complaint") bringing three Counts against Defendant LifeStance Health Group Incorporated ("LifeStance"). Pending before the Court is LifeStance's Motion to Dismiss (Doc. 19). The Court must decide whether Plaintiffs have adequately stated a claim under Federal Rule of Civil Procedure 12(b)(6). They have. Therefore, LifeStance's Motion to Dismiss will be denied.

**I.    Background[1]**

LifeStance is a mental healthcare company focused on providing evidence-based, medically driven treatment services for children, adolescents, and adults suffering from

---

[1] Unless otherwise noted, these facts are taken from Plaintiffs' Complaint (Doc. 1). The Court will assume the Complaint's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).

mental health issues. (Doc. 1 at ¶¶ 7, 10). Plaintiffs are current or former clinicians who worked at LifeStance as W-2 employees providing mental health clinical treatment and therapy to patients. (*Id.* at ¶ 8). As used by Plaintiffs, the term "clinician" means "nonexempt psychiatric and mental health nurse practitioners and other nonphysician employees of LifeStance." (*Id.* at ¶ 59).

### A. Plaintiffs' Allegations

LifeStance's website represents that clinicians would receive a salary ranging between $185,000–$245,000. (*Id.* at ¶ 24). LifeStance further represented that their clinicians are employed as W-2 employees rather than independent contractors. (*Id.* at ¶ 26). Plaintiffs summarized LifeStance's compensation structure as follows: LifeStance was to compensate clinicians between fifty and sixty percent of the gross amounts billed to insurance providers related to the clinician's treatment and service to patients (*id.* at ¶ 35 n.4); LifeStance treated all wages paid to clinicians during their first six to twelve months of employment as an "advance" that LifeStance expects clinicians to repay if they fail to satisfy LifeStance's performance metrics (*id.* at ¶ 28–29); and a clinician's obligation to repay LifeStance's advance follows the clinician if the person leaves the company before LifeStance can recover the amount of the advance, plus interest (*id.*)

Plaintiffs alleged they routinely worked forty and more hours per week several times a month while receiving less than $450 per week "for at least one week and as much as twelve weeks[.]" (*Id.* at ¶ 61–62). The majority of the Plaintiffs claimed they experienced pay periods where they did not receive any compensation for an entire month. (*Id.* at ¶ 62). Plaintiffs represented that LifeStance's advances on wages functioned as "loans" that clinicians were expected to repay without exception, and so the clinicians did not actually receive any wages during their first six to twelve months of employment. (*Id.* at ¶ 64). Plaintiffs also stated that LifeStance did not disclose the metrics or data used to calculate their gross compensation or corresponding deductions from its advances each pay period. (*Id.* at ¶¶ 35–37, 123).

### B. Procedural History

In June 2023, Plaintiffs filed a Complaint bringing the following three claims against LifeStance on behalf of themselves and those similarly situated:

> Count One for unpaid minimum and overtime wages under the FLSA, 29 U.S.C. §§ 206, 207, 215, 216 (*id.* at ¶¶ 101–118);
>
> Count Two for unlawful wage "kickbacks" under the FLSA, 29 C.F.R § 531.35 (*id.* at ¶¶ 119–128); and
>
> Count Three for declaratory relief under the DJA, 28 U.S.C. §2201(a) (*id.* at ¶¶ 129–142).

Plaintiffs sought to bring all claims as a class action under Rule 23(b)(3).[2] (*Id.* at ¶ 94). LifeStance moved to dismiss all Counts under Rule 12(b)(6) in August 2023. (Doc. 19).

In February 2024, Plaintiffs filed a "Request for the Court to take Judicial Notice of Adjudicative Fact" (Doc. 35) with respect to a Florida class action lawsuit filed by Plaintiffs' counsel while representing a similar class of plaintiffs comprised of current or former LifeStance employees. *See* Complaint, *Armand v. LifeStance Health Group, Inc.*, No. 6:23-cv-00103-PGB-EJK, (M.D. Fla. Jan. 20, 2023) (the "Florida Class Action"). Plaintiffs noticed this Court that the Florida district court had denied the motion to dismiss that LifeStance filed in that matter. (Doc. 35 at 1–4). *See* Report and Recommendation, *Armand v. LifeStance Health Group, Inc*, No. 6:23-cv-00103-PGB-EJK, (M.D. Fla. Oct. 27, 2023), ECF No. 34 (Magistrate Judge Embry J. Kidd); *see also* Order Adopting Report and Recommendation, *Armand v. LifeStance Health Group, Inc.*, No. 6:23-cv-00103-PGB-EJK, (M.D. Fla. Feb. 1, 2024), ECF No. 47 (District Judge Paul G. Byron).

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003). A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

---

[2] Unless where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

### III. Discussion

LifeStance argues Plaintiffs have not adequately pled claims under the FLSA and the DJA. (Doc. 19 at 12–19). LifeStance further contends this matter cannot be brought as a class action because Plaintiffs have failed to establish how the putative class members are similarly situated. (*Id.* at 14, 15). The Court will address each of Plaintiffs' claims before turning to LifeStance's challenge to the putative class.

#### A. Count One: Unpaid Wages Under the FLSA

Plaintiffs' Count One is a claim for unpaid minimum and overtime wages under the FLSA. (Doc. 1 at ¶¶ 101–118). The FLSA requires employers to pay their employees a minimum wage for any time spent working during the workweek as well as additional compensation for any time spent in excess of a forty hour workweek. *See* 29 U.S.C. §§ 206(a), 207(a). LifeStance argues Plaintiffs' allegations are too generalized to establish a

*prima facie* showing of FLSA violations.[3] (Doc. 19 at 12–14). LifeStance contends Plaintiffs needed to identify particular workweeks where they were not paid federal minimum or overtime wages and specifically allege the amount and extent of their work. (*Id*. at 13). In LifeStance's opinion, Plaintiffs have simply recited the elements required for FLSA violations in a conclusory fashion, which is insufficient under Rule 12(b)(6). (Doc. 28 at 7). The Court disagrees.

The Ninth Circuit clarified the level of specificity required to establish FLSA claims in *Landers v. Quality Commc'ns, Inc*., 771 F.3d 638 (9th Cir. 2014) (applying *Twombly* and *Iqbal* to claims brought under the FLSA). To bring an FLSA claim for unpaid minimum wages, a plaintiff must "allege facts showing that there was a given week in which he was entitled to but denied minimum wages[.]" *Id*. at 645. To bring an FLSA claim for unpaid overtime wages, a plaintiff must allege at least one workweek in which she worked in excess of forty hours and was not paid overtime wages. *Id.* at 646. A plaintiff can establish a plausible claim "by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id*. at 645 (citing *Pruell v. Caritas Christi*, 678 F.3d 10, 14 (1st Cir.2012)). However, a plaintiff need not go so far as to make an approximation of overtime hours because such "detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants." *Id*.

Plaintiffs argue the following allegations demonstrate they have pled FLSA wage violations with the requisite specificity:

> A.   [LifeStance] refused to pay Plaintiffs minimum wages, overtime wages, and wages in general (i.e., no payment was made at all) for one or more workweeks during the applicable Collective Period [from

---

[3] LifeStance also contends that Plaintiffs are highly educated, licensed professionals who are exempt from FLSA's overtime and minimum wage provisions. (Doc. 19 at 12). However, in their Reply, LifeStance clarified that it "did not move to dismiss based on this affirmative defense." (Doc. 28 at 6). Therefore, the Court will not address LifeStance's exemption argument for the purposes of this Order.

January 2020 to present].

B.  Plaintiffs routinely worked 40 and more hours per week several times a month while employed by [LifeStance] and many of the Plaintiffs went through periods in which they did not receive any compensation for an entire month.

C.  [LifeStance] deprived all the collective action members (which includes Plaintiffs) of earning at least the federal minimum wage for all hours worked, and/or failed to pay them overtime wages when appropriate.

D.  Since the advances were a loan and not wages (according to [LifeStance]), then the Plaintiffs did not actually receive any wages during their first six to twelve months of employment.

(Doc. 27 at 6) (internal citations and quotations omitted). LifeStance is correct that Plaintiffs allegations contain some general phrasing. Nonetheless, when accepted as true, Plaintiffs' allegations set forth examples of unpaid time that occurred from January 2020 to the present through LifeStance's practice of treating all wages paid to clinicians during their first six to twelve months of employment as loans that the clinicians were expected to repay. (*See* Doc. 1 at ¶¶ 28–29, 64). LifeStance's supporting authorities are distinguishable because those cases dealt with complaints that lacked any such examples.[4] The Court finds Plaintiffs allegations establish sufficient plausibility under *Landers*.

Therefore, the Court will deny LifeStance's request to dismiss Count One.

**B.  Count Two: Kickbacks Under the FLSA**

Plaintiffs' Count Two claims that LifeStance's "advance on compensation arrangement"[5] functioned as loans that clinicians were expected to repay through paycheck

---

[4] (*See* Doc. 19 at 13–14 citing *Salazar v. Driver Provider Phoenix LLC*, 2020 WL 5748129, *5 (D. Ariz. Sept. 24, 2020); *Richardson v. Mountain Range Restaurants LLC*, 2015 WL 1279237, at *5 (D. Ariz. Mar. 20, 2015); *Kirchgessner v. CHLN, Inc.*, 174 F. Supp. 3d 1121, 1126 (D. Ariz. 2016)).

[5] LifeStance included copies of each Plaintiff's "Provider Employment Agreement" in their supplemental exhibits to its Motion to Dismiss. (*See* Docs. 20-2; 20-3; 20-4; 20-5; 20-6; 20-7; 20-8; 20-9). Indeed, most of the Provider Employment Agreement expressly providing for similar advance on compensation arrangements. (*See* Docs. 20-2 at 6–7; 20-3 at 7; 20-4 at 7; 20-5 at 7; 20-6 at 7; 20-7 at 7; 20-8 at 7; 20-9 at 7).

- 6 -

deductions, thus resulting in unlawful "kickbacks" under the FLSA (*Id.* at ¶¶ 119–128). The FLSA's anti-kickback regulation provides the following:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

29 C.F.R. § 531.35 (the "Anti-kickback Regulation"). Under the Anti-kickback Regulation, an employer has not satisfied the minimum wage requirement under the FLSA "in any workweek when the cost of [the kickbacks] cuts into the minimum or overtime wages required to be paid [the employee] under the Act." *Id.*; *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 897 (9th Cir. 2013) (to the extent that kickbacks "lower an employee's wages below the minimum wage, they are unlawful"). So, to state a claim for unlawful kickbacks, "a plaintiff must allege an underlying minimum or overtime wage violation caused by the kickback." *Walsh v. SL One Glob., Inc.*, 2022 WL 17722964, *3 (E.D. Cal. Dec. 15, 2022) (citing *Rivera*, 735 F.3d at 897).

Here, Plaintiffs represented that LifeStance "treat[ed] all wages paid during the first six to twelve months of the Clinician's employment as a loan disguised as an advance that LifeStance expected the Clinician to repay if the person failed to satisfy LifeStance's circuitous performance metrics[.]" (Doc. 1 at ¶ 28). Plaintiffs further claimed that LifeStance routinely made deductions to the clinician's pay "without reason or description" and without "details explaining [how] the deductions were related to the "advance." (*Id.* at ¶¶ 123, 37). As a result, Plaintiffs alleged they were forced to kick-back their earned wages to LifeStance and essentially repay their salary. (*Id.* at ¶¶ 28–29, 124–125).

LifeStance argues Plaintiffs' claim fails because its advance on compensation arrangement is a lawful employment practice endorsed by the United States Department of Labor ("DOL"), to which Plaintiffs agreed to in writing. (Doc. 19 at 14–15). LifeStance

- 7 -

cites to various DOL opinion letters[6] for the proposition that "an employer can advance compensation to an employee and then recoup the advance through paycheck deductions without violating the FLSA . . . even if such deduction cuts into the minimum wage or overtime pay due to the employee under the FLSA." (*Id*. at 15 (citing DOL, Wage and Hour Division Opinion Letter of March 20, 1998 and October 8, 2004)). However, the Court notes the opinion letters that LifeStance relies on delt with circumstances where an employer administered deductions from an employee's earned wages to recoup a specific amount of *overpaid wages*.[7] (Docs. 20-10 at 2 (an employer had inadvertently overpaid one of its pilots and wanted to recoup the money by deducting it from his paycheck)); 20-11 at 2 (an employer had inadvertently paid an employee for 75 hours of vacation one pay period when the employee in fact had only 32 hours available)). Plaintiffs, by contrast, are concerned with the deductions LifeStance made from their earned wages that prevented clinicians from receiving *any wages* during their first six to twelve months of employment because clinicians were required to pay those advances back. (Doc. 1 at ¶¶ 63–64). Indeed, Plaintiffs stated that LifeStance's deductions were "arbitrary," "were not commensurate with the work performed by the employee," and functioned so that employee "would not 'earn' the funds advanced even if they worked full time for the entire month." (Doc. 27 at 9–10).

The Court finds Plaintiffs' allegations sufficiently state a claim for unlawful kickbacks under the FLSA. First, Plaintiffs claimed that LifeStance made deductions from their earned wages, which constitutes a direct kick-back for LifeStance's benefit under the FLSA's Anti-kickback Regulation. *See* 29 C.F.R. § 531.35. Second, Plaintiffs alleged these deductions "caused [c]linicians to earn $0 for work conducted or, less than $450.00 in a given week" from January 2020 to the present. (Doc. 1 at ¶ 27). When accepting these allegations as true, Plaintiffs sufficiently articulated how the alleged kickbacks resulted in

---

[6] LifeStance included copies of each DOL opinion letter in their supplemental exhibits to its Motion to Dismiss. (*See* Docs. 20-10; 20-11).

[7] Furthermore, LifeStance's argument asks the Court to evaluated whether the "advance on compensation arrangement" is lawful. (*See* Doc. 28 at 9–11). Such a determination would be premature at this stage of the proceedings.

underlying minimum and/or overtime wage violations. *See Walsh*, 2022 WL 17722964, *3 (citing *Rivera*, 735 F.3d at 897).

Therefore, the Court will deny LifeStance's request to dismiss Count Two.

### C. Count Three: Declaratory Relief

Plaintiffs' Count Three seeks a declaration under the DJA stating the following:

(a) The advance that LifeStance uses to create indentured servitude is a violation of the 13th Amendment to the United States Constitution, thereby making it an illegal and unenforceable obligation.

(b) LifeStance cannot take any further action to seek to collect on its indenture as such action is unconstitutional and thus unenforceable.

(c) LifeStance must repay all Clinicians whatever portion of the indenture it has collected from them as of the date of the entry of final judgment in this action.

(Doc. 1 at ¶ 130). Life Stance argues Plaintiffs' DJA should be dismissed because it fails to state a claim for relief and is duplicative of an identical request for declaratory judgment filed in the Florida Class Action by Plaintiffs' counsel. The Court will address each argument in turn.

#### 1. Requirements for Claims Under the Declaratory Judgment Act

The Court will first determine whether Plaintiffs have stated a claim for relief under the DJA. LifeStance argues Count Three fails because Plaintiffs' allegations foreclose any possible claim that LifeStance's advance on compensation arrangement violates the Thirteenth Amendment. (Doc. 19 at 15–17). In so doing, LifeStance proposes Plaintiffs should be held to the requirements for bringing a cause of action under the Thirteenth Amendment. (*Id*. at 16 ("Unless a plaintiff alleges that he does not have the option of leaving his job, his claim under the Thirteenth Amendment must be dismissed.") (quoting *Rogers v. American Airlines, Inc.*, 527 F.Supp. 229, 231 (S.D.N.Y.1981)). However, those standards are not relevant when considering Count Three under Rule 12(b)(6) because Plaintiffs seek to bring a DJA claim—Plaintiffs have not pled an independent cause of action under the Thirteenth Amendment. The Court will thus proceed to review Count

Three under the requirements for DJA claims.

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Therefore, a district court must first inquire whether there is an actual case or controversy within its jurisdiction.[8] The ripeness of a DJA claim depends upon "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005).

Count three seeks a declaration that LifeStance's advances violate the Thirteenth Amendment as well as associated injunctive relief.[9] The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII. Relevant here, Plaintiffs stated that LifeStance used their advance on compensation arrangement to create "employer generated debt", which LifeStance used as "leverage to hold the employee hostage until LifeStance can replace the employee once the Clinician gives LifeStance notice of the person's decision to terminate her/his employment." (*Id.* at ¶ 43–45). Plaintiffs claimed that prospective clinicians "accept[] employment with LifeStance under the delusion of earning a competitive salary when in fact the employee is signing up to become an

---

[8] The DJA creates a federal remedy but is not itself a basis for federal jurisdiction. *See Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir.1983). Because Plaintiffs' DJA claim rests in part to Plaintiffs' alleged FLSA violations, the Court may properly consider Plaintiffs' Count Three under its federal question jurisdiction.

[9] In their Response, Plaintiffs represent that "[their]claim for declaratory relief *does not* hinge on whether LHG's compensation policies and employment agreement violate the Thirteenth Amendment." (Doc. 27 at 13) (emphasis added). But Plaintiffs position contradicts the plain language of their Count Three. The Court will hold Plaintiffs to their allegations in the Complaint. To the extent Plaintiffs' wish to modify their allegations, they must make the appropriate motion.

- 10 -

indentured servant." (*Id.* at ¶ 30).

When accepting these allegation as true, as the Court must, Plaintiffs' Complaint demonstrates a bona fide ongoing controversy between the parties regarding whether LifeStance's advance on compensation arrangement violates the Thirteenth Amendment. (Doc. 27 at 13–14).[10]  LifeStance opposes that Plaintiffs' DJA claim must fail because "the ironic reality is that plaintiffs actually were overpaid because they never provided the services to recover the large advances they accepted and have never repaid those amounts they never earned" (Doc. 28 at 11). But by doing so, LifeStance essentially asks this Court to resolve disputes of fact, which is premature at this juncture. *See Knievel*, 393 F.3d at 1072 (district courts must accept all factual allegations in the complaint as true). When viewing the Complaint in the light most favorable to Plaintiffs, the Court finds Plaintiffs have pled enough facts under Count Three to state a DJA Claim that is plausible on its face. *Twombly*, 550 U.S. at 570.

    **2.    Whether Plaintiffs' Claim under the Declaratory Judgment Act Would Promote Duplicative Litigation**

Despite having concluded that Plaintiffs have plausibly stated a claim under the DJA, the DJA further requires district courts to balance "concerns of judicial administration, comity, and fairness to the litigants" when deciding whether or not to exercise jurisdiction. *Principal Life*, 394 F.3d at 672 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)). This is because "[t]he Declaratory Judgment Act gives the Court the *authority* to declare the rights and legal relations of interested parties, but not a *duty* to do so." *Stickrath v. Globalstar*, Inc., 2008 WL 2050990 (N.D. Cal. May 13, 2008)

---

[10] Plaintiffs also maintain their DJA claim should survive because the parties dispute whether LifeStance's contractual arrangement is unconscionable. (Doc. 27 at 12–14). However, Plaintiffs do not allege any state law theory of unconscionability in their claim for declaratory relief. Plaintiffs' seek a declaration that "[t]he advance that LifeStance uses to create indentured servitude is a violation of the 13th Amendment to the United States Constitution, thereby making it an illegal and unenforceable obligation." (Doc. 1 at ¶ 130). And, the Court's evaluation of a motion to dismiss is limited to the four corners of the complaint. *Lee*, 250 F.3d at 688 (A court's review of motion to dismiss under a Rule 12(b)(6) is typically "limited to review" of only the complaint itself). Therefore, the Court will not consider Plaintiffs' unconscionability argument at this juncture.

- 11 -

(emphasis in original) (citing *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008)). "[T]herefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Leadsinger*, 512 F.3d at 533 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)). The relevant factors a district court should consider when deciding whether to hear a DJA claim are "the discouragement of the use of declaratory actions as a means of forum shopping, the avoidance of duplicative litigation, the extent to which the declaratory action will resolve the controversy, the convenience of the parties, and the availability and convenience of other remedies." *Astra Veda Corp. v. Disruptive Res. LLC*, 2022 WL 3921117, *1 (D. Ariz. Aug. 31, 2022) (citing *Principal Life*, 394 F.3d at 672).

LifeStance argues Count Three should be dismissed because it is duplicative of the identical request for declaratory judgment in the Florida Class Action. LifeStance further argues that Plaintiffs' present action constitutes forum shopping. (Doc. 19 at 17–19). The Florida Class Action concerns claims for unpaid wages under the FLSA, unlawful kickbacks under the FLSA, and a claim for declaratory judgment. *See* Amended Complaint, *Armand v. LifeStance Health Group, Inc.*, No. 6:23-cv-00103-PGB-EJK, (M.D. Fla. June 1, 2023), ECF No. 24 at ¶¶ 100–105. Specifically, the Florida Class Action seeks the following declaration:

> (a) The advance that LifeStance uses to create indentured servitude is a violation of the 13th Amendment to the United States Constitution, thereby making it an illegal and unenforceable obligation.
>
> (b) LifeStance cannot take any further action to seek to collect on its indenture as such action is unconstitutional and thus unenforceable.
>
> (c) LifeStance must repay all Clinicians whatever portion of the indenture it has collected from them as of the date of the entry of final judgment in this action.

*Id.* at ¶ 129.

Plaintiffs argue the Florida Class Action is not duplicative of the present matter because the parties, class definitions, and lead plaintiffs are different. (Doc. 27 at 15). Plaintiffs also point out the putative class in the Florida Class Action is limited to

LifeStance clinicians who provided services to patients within Florida, and Plaintiffs have not served any Florida patients. (*Id.*) In Plaintiffs' view, a declaratory ruling regarding the enforceability of their employment agreements would not be duplicative of a ruling on the enforceability of the employment agreements in the Florida Class Action because, "according to [LifeStance,] the terms of employment vary between employees[.]" (*Id.* at 16). The Court agrees with Plaintiffs.

Although Plaintiffs' DJA claim is phrased identically to the claim in the Florida Class Action, *compare* Amended Complaint, *Armand v. LifeStance Health Group, Inc.*, No. 6:23-cv-00103-PGB-EJK, (M.D. Fla. June 1, 2023), ECF No. 24 at ¶ 129 *with* (Doc. 1 at ¶ 130), it is not certain that both matters concern identical circumstances. So, the specific issues raised in either matter may differ. Moreover, "when other claims are joined with an action for declaratory relief (e.g. . . . claims for other monetary relief), the district court should not, as a general rule, [] decline to entertain the claim for declaratory relief." *Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163,1167 (9th Cir. 1998) (quoting *Gov't Emples. Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998)) (examining a declaratory relief claim that was accompanied by claims for breach of contract, negligence, intentional infliction of emotional distress, and punitive damages). This is because claims that exist independent of the request for a declaration are not subject to DJA's discretionary jurisdictional rule, and to dismiss only the declaratory component of such an action would result in "piecemeal litigation." *Id.* (citations omitted). Because (a) Plaintiffs have alleged viable claims for FLSA violations and (b) it is not clear that Plaintiffs DJA claim would result in duplicative litigation, the Court will exercise its discretion to hear Plaintiffs' DJA claim.

In sum, the Court will deny LifeStance's request to dismiss Count Three.

### D.     The Putative Class

Last, LifeStance contends this matter cannot be brought as a class action because Plaintiffs have failed to establish how the putative class members are similarly situated. (Doc. 19 at 14, 15). Plaintiffs proposed the following putative class:

>[N]onexempt psychiatric and mental health nurse practitioners and other nonphysician employees of LifeStance (called "Clinicians" . . . ) who provided mental health clinical services to LifeStance patients within the United States at any time from January 2020 to the entry of judgment in this case (the "Collective Period") and who: (a) Did not receive any compensation from LifeStance, during the individual's employment, for a minimum of at least one week, with many not receiving compensation for as much as twelve weeks; (b) Did not receive all compensation due them, to the extent the individual was paid, consistent with LifeStance's obligation to compensate them a percentage of all services billed to patients, insurance companies and others; (c) Paid some portion or all the specious debt obligation conceived solely by LifeStance for its own benefit as a condition of the employee's employment; [and] (d) [] had deductions from their wages for a debt and other obligations that were never disclosed or explained to them.

(Doc. 1 at ¶ 59). Plaintiffs further represented that, based on preliminary investigation, the putative class can be categorized as licensed therapists or psychologist, licensed psychiatric nurse practitioners, and licensed clinical social workers. (*Id*. at ¶ 70).

LifeStance argues that neither Count One, Two, nor Three can be pled as a class action because the Complaint does not contain any allegations showing how licensed therapists or psychologist, licensed psychiatric nurse practitioners, or licensed clinical social workers have similar job duties. (Doc. 19 at 14, 15). LifeStance also contends Plaintiffs have potentially different employment contracts and have not set forth allegations regarding how they were subject to similar compensation practices. (*Id*. at 15).[11]

District courts enjoy broad discretion to control the class certification process and whether or not to permit discovery beforehand. *See Vinole v. Countrywide Home Loans,*

---

[11] LifeStance also argues Plaintiffs' DJA claim cannot be brought as class action because whether the advance-on-compensation arrangement is unconscionable is a question of state law, and Plaintiffs' employment contracts contain different choice of law provisions. (Doc. 28 at 12). However, as mentioned *supra* Section III.C(1) at n.10, Plaintiffs do not allege any such theory of unconscionability in their claim for declaratory relief. Plaintiffs seek a declaration that "[t]he advance that LifeStance uses to create indentured servitude is a violation of the 13th Amendment to the United States Constitution, thereby making it an illegal and unenforceable obligation." (Doc. 1 at ¶ 130). Because the Court's evaluation of LifeStance's Motion to Dismiss is "limited to review" of only the allegations in the Complaint itself, the Court will not consider the parties' state law unconscionability arguments at this juncture. *Lee*, 250 F.3d at 688. In any event, a contract provision that violates the United States Constitution would be unlawful and unenforceable in any state.

*Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). "A preemptive motion to deny class certification—for example, in a motion to dismiss []—is permissible, as 'nothing in the plain language of Rule 23 either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question.'" *Sousa v. 7-Eleven, Inc.*, 2020 WL 6399595, *4 (S.D. Cal. Nov. 2, 2020) (quoting *Vinole*, 571 F.3d 935, 940–41 (9th Cir. 2009)). Nonetheless, it is rare to dismiss a class definition while still in the early stages of case proceedings. *See e.g., In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007) ("[T]he granting of motions to dismiss class allegations before discovery has commenced is rare."). "The propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). In those instances, to deny discovery would be an abuse of discretion. *Id*. The better practice is to provide the litigants with an opportunity to present evidence regarding whether a class certification is maintainable. *Vinole*, 571 F.3d at 942 (citing *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977))

Here, LifeStance has not filed an answer nor is there a motion for certification before the Court. LifeStance filed its present Motion to Dismiss on August 25 2023, which was weeks before the parties' deadline for initial disclosures (Doc. 16) and ten months before the parties' fact discovery deadline (Doc. 26 at 2). Although LifeStance points out potential issues with Plaintiffs' proposed class and subclass definitions, the Court finds that Plaintiffs should be given the opportunity to make a later motion in which their case for class certification can be fully evaluated by the Court. *See e.g. Sousa*, 2020 WL 6399595, *4–5; *see also Cole v. Asurion Corp.*, 2008 WL 5423859, at *14 (C.D. Cal. Dec. 30, 2008). The Court agrees with Plaintiffs that "a motion for class certification is a more appropriate time to consider the class allegations in [the] complaint." *Silcox v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7335741, at *9 (S.D. Cal. Dec. 22, 2014). The Court will therefore allow Plaintiffs' class action allegations to proceed.

## IV. Conclusion

To summarize, LifeStance's Motion to Dismiss will be denied in its entirety. Plaintiffs' Count One sufficiently pled that there was a given week between January 2020 to the present where they were denied minimum wages under the FLSA, and worked in excess of forty hours yet were denied overtime wages under the FLSA. Plaintiffs' Count Two plausibly alleged that LifeStance carried out a scheme constituting unlawful kickbacks under the FLSA. Moreover, Plaintiffs demonstrated a bona fide ongoing controversy between the parties on whether LifeStance's advance on compensation arrangement is unconstitutional under the Thirteenth Amendment. And, because (a) it is not clear that the Florida Class Action poses a risk of duplicative litigation and (b) Plaintiffs have stated sufficient FLSA violations that are independent of their DJA claim, the Court will exercise its discretion to hear Plaintiffs' Count Three. The Court will also defer its decision regarding the propriety of Plaintiffs' class action allegations to allow Plaintiffs an adequate opportunity to conduct formal discovery in support of certification.

Accordingly,

**IT IS ORDERED** that Defendant LifeStance Health Group Incorporated's Motion to Dismiss (Doc. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that **within fourteen (14) days,** Defendant LifeStance Health Group Incorporated shall answer Plaintiffs' Complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

Dated this 13th day of March, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge